UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WHALEY,

     Plaintiff,

v.

HENRY FORD HEALTH SYSTEM,

     Defendant.

Case No. 2:15-cv-12101

Hon. David Lawson

---

LANCE C. YOUNG (P51254)
NEIL B. PIOCH (P67677)
SOMMERS SCHWARTZ, P.C.
Attorneys for Plaintiff
One Towne Square, 17th Floor
Southfield, MI 48076
(248) 335-0300

BRIAN YALDOU (P70600)
THE LAW OFFICE OF BRIAN
YALDOU
23000 Telegraph
Brownstown Twp., MI 48134
(734) 692-9200

TERRENCE J. MIGLIO (P30541)
BARBARA E. BUCHANAN (P55084)
VARNUM LLP
Attorneys for Defendant
39500 High Pointe Blvd., Ste. 350
Novi, MI 48375
(248) 567-7400
tjmiglio@varnumlaw.com
bebuchanan@varnumlaw.com

---

**DEFENDANT'S BRIEF IN OPPOSITION TO
MOTION FOR CONDITIONAL CLASS CERTIFICATION AND
COURT SUPERVISED NOTICE PURSUANT TO 29 U.S.C. § 216(b)**


**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.........................................................................iii

STATEMENT OF QUESTIONS PRESENTED.....................................vi

I.    INTRODUCTION ........................................................................1

II.   FACTS ........................................................................................1

    A.    HFHS Operates A Vast Network Of Medical Facilities......................1

    B.    The HFHS General Appearance Standards...........................................3

    C.    Uniformed Employees Must Comply With Policies Established By Their Particular Business Units/Department...................................4

    D.    HFHS Maintains An Infection Control Program with Specific Infection Control Policies........................................................................6

    E.    Plaintiff's "Collective Action Complaint" Asserts Claims Based Misrepresentations of and Contrived Inferences From, The General Appearance Standards .............................................................7

    F.    Plaintiff's Claims Are Contradicted By Numerous Non-Exempt Employees In Various Job Classifications Who Provide Direct Patient Care As Well As Supervisors of Those Employees.................8

    G.    Plaintiff's Motion For Class Certification ...............................................9

III.  LAW AND ARGUMENT................................................................11

    A.    The Standard of Review ......................................................................11

    B.    Plaintiff Has Not Demonstrated Any Interest By Other Employees To Show That A Collective Action Is Appropriate .........13

    C.    Plaintiff Has Not Shown He Is Similarly Situated To Other Employees In The Proposed Collective Class ....................................15

        1.    Plaintiff Is Not Similarly Situated With Other HFHS Employees By Virtue of a Common Policy or Plan.................16

i

      2.     Plaintiff Has Not Shown That His Job Responsibilities Make Him Similarly Situated With Other HFHS Employees ................................................................... 18

      3.     Plaintiff's Conclusory Assertions  Are Irrelevant .................... 19

      4.     Other Courts Agree That Similar "Uniform Maintenance" Claims Should Not Be Conditionally Certified ....................... 20

      5.     The Cases Cited By Plaintiff Are Inapposite ........................... 22

    D.     The Proposed Notice Is Objectionable ................................................ 23

IV.    Conclusion ....................................................................................................... 25

# INDEX OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*,

    242 F.R.D. 530 (N.D. Cal. 2007) ...................................................................25

*Arrington v. Michigan Bell Tel. Co.*,

    2011 WL 33119691 (E.D. Mich. August 1, 2011) (Lawson, J.) 13, 14, 15, 20

*Bacon v. Eaton Aeroquip, LLC*,

    2012 WL 4321712 (E.D. Mich. Sept. 12, 2012) ...........................................21

*Boyd v. Jupiter Alum. Corp.*,

    2006 WL 1518987, (N.D. Ind. May 31, 2006).............................................25

*Cason v. Vibra Healthcare*,

    2011 WL 1659381 (E.D. Mich. May 3, 2011) ..............................................15

*Chandler v. Heartland Employment Serv.*,

    2014 WL 1681989 (E.D. Pa. Apr. 28, 2014)......................................... 21, 22

*Comer v. Wal-Mart Stores*,

    454 F.3d 544 (6th Cir. 2006) ................................................................ 12, 17

*Dinkel v. Medstar Health*,

    880 F.Supp.2d 49 (D.D.C. 2012)..................................................... 21, 23, 24

*Dybach v. State of Florida Dep't of Corr.*,

    942 F.2d 1562 (11th Cir. 1991) ...................................................................14

*Fisher v. Michigan Bell Tel. Co.*,

    665 F.Supp.2d 819 (E.D. Mich 2009) ................................................ 12, 13, 14

*Frye v. Baptist Memorial Hosp., Inc.*,

    2008 WL 6653632 (W.D. Tenn. Sept. 16, 2008) ..........................................14

*Hall v. Guardsmark*,

    2012 WL 3580086 (W.D. Pa. August 17, 2012) .................................... 16, 23

*Hoffman v. Securitas Sec. Serv.*,

    2008 WL 5054684 (D. Idaho Aug. 27, 2008) ...............................................25

*Hoffmann-La Roche, Inc. v. Sperling*,

    493 U.S. 165, 69 (1989) ...............................................................................11

*Holley v. Erickson Living*,

    2012 WL 1835738 (E.D. Pa. May 21, 2012)................................................13

*Moore v. PNC Bank,*

    2013 WL 2338251 (W.D. Pa. May 29, 2013) ..............................................16

*O'Brien v. Ed Donnelly Enterprises*,

    575 F.3d 567 (6th Cir. 2009) .................................................................. 12, 16

*Olivio v. GMAC Mortgage Corp.*,

    374 F.Supp.2d 545 (E.D. Mich. 2004) ................................................... 12, 16

*Outlaw v. Secure Health LP,*

    2012 WL 3150582 (M.D. Pa. August 2, 2012) ...........................................24

*Pacheco v. Boar's Head Provisions Co.*,

    671 F.Supp.2d 957 (W.D. Mich. 2009) .......................................................13

*Parker v. Rowland Express, Inc.*,

    492 F.Supp.2d 1159, 1165 (D. Minn. 2007) ...............................................14

iv

*Robbins-Pagel v. Wm. F. Puckett, Inc.*,

    2006 WL 3393706 (M.D. Fla. Nov. 22, 2006)................................................24

*Swinney v. Amcomm, Tele., Inc.*,

    2013 WL 28063 (E.D. Mich. Jan. 2, 2013) ...................................................15

*Williams v. Securitas Sec. Serv.*,

    2011 WL 3629023 (E.D. Pa. Aug. 17, 2011) ................................................23

*Wright v. Lehigh Valley Hosp. and Health Network*,

    2011 WL 221770 (E.D. Pa. Jan. 20, 2011)...................................................25

**<u>Statutes</u>**

29 U.S.C. § 216(b) ...................................................................................14

## STATEMENT OF QUESTIONS PRESENTED

**I.   WHETHER THE COURT SHOULD DENY PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE CLASS UNDER THE FLSA WHERE PLAINTIFF HAS NOT SHOWN SUFFICIENT INTEREST FROM POTENTIAL OPT-IN PLAINTIFFS**

*Henry Ford Health System answers: "Yes"*

*The Court should answer: "Yes"*

**II.  WHETHER THE COURT SHOULD DENY PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE CLASS BECAUSE PLAINTIFF IS NOT SIMILARLY SITUATED TO THE EMPLOYEES IN THE PUTATIVE CLASS**

*Henry Ford Health System answers: "Yes"*

*The Court should answer: "Yes"*

**III. WHETHER THE COURT SHOULD REJECT PLAINTIFF'S PROPOSED NOTICE TO THE PUTATIVE CLASS FOR THE REASON THAT IT IS IMPROPER**

*Henry Ford Health System answers: "Yes"*

*The Court should answer: "Yes"*

## I.      <u>INTRODUCTION</u>

Plaintiff, a Henry Ford Health System ("HFHS") employee, claims that general personal appearance standards, applicable to all HFHS employees (uniformed, non-uniformed, custodial, executives, patient care providers, and non-patient care providers alike) mandate that he iron his scrubs, even though the Standards contain no such requirement. His purported interpretation of the policy is irrational, contradicted by other HFHS policies and is not supported by other HFHS employees.   Plaintiff claims the alleged "ironing" requirement, a pure fiction of this lawsuit, applies to the over 23,000 individuals employed by HFHS. Standing alone, with no other employees having joined him, Plaintiff asks this Court to conditionally certify a collective class of thousands of employees, in hundreds of different job classifications, at different facilities, in different departments, subject to different policies, and performing different job duties. Plaintiff falls woefully short of meeting his burden of establishing that his frivolous claim should be conditionally certified.

## II.     <u>FACTS</u>

### A.      **HFHS Operates A Vast Network Of Medical Facilities**

Henry Ford Health System ("HFHS") is a Michigan non-profit corporation, which owns and operates an extensive network of medical facilities across Southeast Michigan, including hospitals, medical centers, emergency rooms,

1

pharmacies, walk-in labs, health centers, eye care centers and specialized medical facilities. **Exhibit 1,** Temrowski Decl., ¶¶ 4, 5, 10, 11, 16, 20, 29, 35. Specifically, HFHS operates seven business units involved in direct patient care: Henry Ford Hospital, Henry Ford Medical Group, Henry Ford Wyandotte Hospital, Henry Ford Macomb Hospital, Henry Ford West Bloomfield Hospital, Henry Ford Behavioral Health and Community Care Services. *See id.* at ¶ 5. Within these business units, there are currently (i) hundreds of different departments; (ii) hundreds of different job classifications; (iii) hundreds of supervisors; and (iv) thousands of non-exempt employees involved in direct patient care:[1]

| Business Unit | Number of Departments | Number of Job Classifications | Number of Supervisors | Current Number of Non-Exempt Employees in Direct Patient Care |
|---|---|---|---|---|
| Henry Ford Hospital | At least 216 | At least 64 | At least 271 | 1,010 |
| Henry Ford Medical Group (41 Medical Centers) | At least 3 per Medical Center | At least 3 per Medical Center | At least 460 | 1,190 |
| Henry Ford Wyandotte Hospital | At least 113 | At least 50 | At least 86 | 322 |
| Henry Ford Macomb | At least 121 | At least 57 | At least 115 | 403 |
| Henry Ford West Bloomfield Hospital | At least 57 | At least 50 | At least 52 | 274 |
| Henry Ford Behavioral Health (9 locations) | At least 1 per location | At least 3 per location | At least 33 | 103 |
| Community Care Services (55 locations) | At least 1 per location | At least 3 per location | At least 114 | 388 |

[1] *See* Temrowski Decl., attached as **Exhibit 1**.

2

**B.     The HFHS General Appearance Standards**

HFHS maintains general Personal Appearance Standards ("General Appearance Standards") as one of its Human Resources policies, No. 5.06. *See* Complaint [Doc #1], ¶1.  The General Appearance Standards (**Exhibit 2**), were implemented by HFHS on January 1, 1999 and apply to all HFHS employees, students, volunteers, contractors and vendors at all HFHS facilities. *See* Gen. Appearance Standards, Section 2.0.

> Section 4.0 of General Appearance Standards contains the actual "Policy:"
>
> HFHS employees are expected to maintain proper hygiene and observe standards of appropriate business attire. All HFHS employees shall present themselves well-groomed, and appropriately dressed at all times while on premises.  Although the <u>general minimum standards of this system-wide policy must be adhered to at each business unit, a business unit or department (i.e. patient care areas) can choose to implement more restrictive requirements based on infection control and other regulatory requirements.</u>

General Appearance Standards, Section 4.0 (emphasis added).

Section 5.0 provides guidance to employees in the form of "examples" of what constitutes "Acceptable" and "Unacceptable" personal grooming and appearance. General Appearance Standards, Section 5.0.  According to the General Appearance Standards, it is "Unacceptable" for an employee's clothing to be "[s]oiled, wrinkled, torn, noticeably worn, too tight or too loose" or to be "[s]ee-through or revealing." *Id.* On the other hand, it is "Acceptable" for clothing to be "[c]lean, neat, pressed, in good repair and appropriate size." *Id.* Plaintiff claims that

3

because the General Appearance Standards indicate it is "acceptable" to wear "pressed" clothing, that means he, and thousands of other HFHS employees, are <u>required</u> to use a hot iron on their uniforms before coming to work. <u>Nothing in the General Appearance Standards, however, requires employees to iron their clothes or even mentions "ironing".</u>

### C. Uniformed Employees Must Comply With Policies Established By Their Particular Business Units/Department

The General Appearance Standards also identify the colored uniforms to be worn by <u>some</u> employees. *Id.* They also incorporate by reference, policies regarding uniforms established by local business unit/departments: "<u>Employees who are required to wear a uniform must comply with their approved policy as established by their local business unit/department.</u>" *Id.* at Section 2.0 (emphasis added).

For example, the HFHS Radiology department, in which Plaintiff works as an MRI Technologist (Complaint, ¶ 6), maintains its own Personal Appearance Standards **Exhibit 3**, ("Radiology Appearance Standards"); **Exhibit 4**, P. Wenzel Decl., ¶ 5. The Radiology Appearance Standards specifically adopt only certain sections of the General Appearance Standards:

> The Radiology Department Personnel will follow the HFHS Policy No: 5.06 regarding Philosophy/Purpose [Section 1.0], Scope [Section 2.0], Responsibility Policy [Section 3.0], and the Uniform Standardization Color Chart.

4

*See* Radiology Appearance Standards, p. 1 (section numbers added).

The HFHS Radiology department did not adopt Section 5.0 (Practice and Procedure) of the General Appearance Standards. Instead, the Radiology Appearance Standards contain a different description of what is "Unacceptable" for clothing. *See id.* ("Not acceptable: Shirts with inappropriate sayings, logos, or advertising. No low cut or cropped shirts, tee-shirts, tank, tube or camouflage tops or sleeveless tops without a jacket.").  As with the General Appearance Standards, there is nothing in the Radiology Appearance Standards which require any employee to iron his or her uniform. The Radiology Standards do not even refer to "pressing" clothes.

Certain departments within the Henry Ford Health System, such as those involved in providing critical care or surgery services, provide hospital laundered scrubs for employees. *See, e.g.,* **Exhibit 5,** Henry Ford Hospital Central Sterile Reprocessing Attire Policy ("*Hospital* laundered surgical scrubs are available for Surgical Services staff.")(emphasis added); **Exhibit 6**, HFHS Surgical Attire, ("Facility approved, clean and freshly *hospital* laundered surgical attire should be donned in a designated dressing area . . . .")(emphasis added); **Exhibit 7**, Henry Ford Wyandotte Hospital Attire for the Surgery Department ("All reusable attire will be laundered after each use in a laundry facility approved and monitored by the hospital."). Some surgical departments within HFHS permit home laundry of

5

surgical scrubs under certain conditions. *See* **Exhibit 5,** Henry Ford Hospital Central Sterile Reprocessing Attire Policy, ("Home laundering of surgical scrubs is permitted" but "[s]crub attire must be laundered in adherence to [Infection Control Manual Policy] 8.16")[2].   Other HFHS surgical departments prohibit home laundering of surgical scrubs. *See, e.g.,* **Exhibit 7,** Henry Ford Wyandotte Hospital Attire for the Surgery Department ("Home laundering of department issued surgical attire is prohibited.").

### D.  HFHS Maintains An Infection Control Program with Specific Infection Control Policies

While Plaintiff asserts that the General Appearance Standards constitute an "infection control" policy (Complaint ¶¶ 8, 11, 46). HFHS maintains a specific system-wide "Infection Prevention and Control Program". The Program is comprised of extensive policies and procedures set forth in the HFHS "Infection Control Policy Manual." **Exhibit 8,** Infection Control Policy Manual ("ICPM").[3] Policy No. 1.01 of the ICPM identifies the "objective, authority, scope, organization and components" of the HFHS Infection Prevention and Control Program. *Id.*, ICPM Policy No. 1.01.  Section VI.d of Policy No. 1.01 sets forth the process of revising current, and adding new, infection control policies to the

---

[2] Policy 8.16 of the ICPM specifically requires that certain laundry items be washed at certain temperatures for a designated period of time. *See* **Exhibit 8**.

[3] The ICPM is available to all HFHS employees on the HFHS Intranet. *See* **Exhibit 1,** Temrowski Decl, ¶ 43.

6

Program. Once they are approved, such policies are added to the Infection Prevention and Control Manual. *Id.*, Section VI.d.*i-iv*. Absent from the Infection Prevention and Control Manual are the General Appearance Standards (Human Resources Policy 5.06, **Exhibit 2**), upon which Plaintiff bases his Complaint, as the General Appearance Standards are <u>not</u> an infection control policy. **Exhibit 8**, Infection Control Policy Manual.

### E.   Plaintiff's "Collective Action Complaint" Asserts Claims Based On Misrepresentations of and Contrived Inferences From, The General Appearance Standards

Plaintiff filed his "Collective Action Complaint" ("Complaint")[Doc.#1] on June 9, 2015. Plaintiff alleges he has been employed by HFHS as an MRI Technologist since 2003 and has regularly worked at least 40 hours per week. *See id.* ¶¶ 6, 47. Plaintiff alleges that HFHS failed to pay overtime to him and other HFHS employees for time allegedly spent at home on "uniform maintenance." *See* Counts I-II, Prayer for Relief, ¶ (d). Plaintiff alleges that "the only option for Defendant's employees was to spend several 'off-the-clock' hours each week, either at home or in a laundromat, properly maintaining their work uniform." *See id.* ¶18. Plaintiff claims that he usually spends about three hours each week "washing and ironing his uniforms." *See id.* ¶51. He "believes" that "all of Defendant's uniformed employees routinely spent two to three hours of 'off-the-clock' time each week maintaining their uniforms . . . ." *See id.* ¶57. Plaintiff claims that HFHS

7

knew the employees were allegedly performing the work "off-the-clock" and is required to pay him, and all other HFHS non-exempt direct patient care employees, for the time allegedly spent "maintaining" uniforms. *See id.* ¶¶42, 53-54, 58, 83-84, 92. The Complaint is based entirely on unfounded beliefs and contrived inferences purportedly drawn from the General Appearance Standards.

While Plaintiff references "patient safety, infection control, dress code and appearance policies at issue" in his Complaint, he fails to identify or attach any such policies to the Complaint or the instant motion. *See id.* ¶ 46.

### F. Plaintiff's Claims Are Contradicted By Numerous Non-Exempt Employees In Various Job Classifications Who Provide Direct Patient Care As Well As Supervisors of Those Employees

In stark contrast to Plaintiff's assertions, many non-exempt employees who provide direct patient care in various job classifications and departments do not iron their scrubs or uniforms. *See* Employee Decls., attached as **Exhibit 9**.[4]

- At least 20 HFHS non-exempt, direct patient care employees in various classifications attest that they do not iron their uniforms and they have not been disciplined for failing to do so. *See id.*

- At least 19 HFHS non-exempt, direct patient care employees in various classifications, attest that they simply wash their scrubs and uniforms with their other clothes. *See id.*

---

[4] Numerous non-exempt employees (also subject to the General Appearance Standards) in various departments but not in direct patient care positions, also attest that they do not iron their uniforms. See **Exhibit 14**, Non-Direct Employee Decls.

- At least 14 non-exempt, direct patient care employees in various classifications, attests that they wash their scrubs and uniforms and take them out of the dryer before they wrinkle. *See id.*

- Some non-exempt employees do not launder their scrubs or uniforms; but confirm that someone else, such as a spouse or a significant other, does it for them. *See id.*

- And still another non-exempt, direct patient care employee receives scrubs laundered by the hospital. *See id.*

Eleven supervisors across HFHS' facilities who supervise non-exempt employees, have provided declarations confirming that they are not aware of any of their employees ironing their uniforms. *See* Supervisor Decls., **Exhibit 10**. Those supervisors also confirm that they do not instruct their employees to iron their uniforms. *See id.* In addition, the supervisors have not disciplined any employees for not ironing their uniforms. *See id.* None of these supervisors iron their own scrubs or uniform. *See id.* Similar to the non-exempt direct patient care employees, all of the supervisors wash their uniforms with their other clothes, seven of the supervisors remove their uniforms from the dryer before they become wrinkled and others launder the uniforms for at least two of the supervisors. *See id.*

### G.   Plaintiff's Motion For Class Certification[5]

---

[5] HFHS filed a motion to dismiss Plaintiff's Complaint on July 27, 2015 [Doc. #16]. Plaintiff's Motion For Conditional Certification and HFHS' Motion To Dismiss are scheduled for hearing on September 22, 2015. *See* ECF Docket Text Re-Setting Deadlines, August 7, 2015.

Plaintiff executed the "Consent to Join" on April 3, 2015. *See* Complaint, Exhibit B, "Consent to Join" [Doc. #1].   Plaintiff filed the pending motion for conditional certification on June 9, 2015 [Doc. # 5].   In his motion, Plaintiff seeks conditional certification of thousands of HFHS's employees:

> All people who have worked as full-time, hourly, uniformed employees for Defendant in any workweek in the past three years who had direct patient care responsibilities and spent unpaid "off-the-clock" time maintaining their uniforms pursuant to Defendant's Personal Appearance Standards Policy.

Pl. Motion for Cond. Cert., p. 5 of 29 [Doc. #5].  This description includes almost 3,700 employees. *See* Temrowski Decl., attached as **Exhibit 1**.

Although Plaintiff claims to bring this case on behalf of himself and other similarly situated HFHS employees, (Complaint, ¶61), he is leaving employment with HFHS and moving to Arkansas as of September 10, 2015, a mere 90 days after filing this lawsuit. **Exhibit 12,** Bankruptcy Motion To Approve Sale.

Over four months have passed since Plaintiff signed his "Consent to Join," and yet, no potential "opt-in" plaintiffs have filed any "Consents to Join."   In addition, Plaintiff has not identified any potential "opt-in" plaintiffs in his pleadings.  Similarly, the motion for conditional certification is not supported by affidavits from any employee other than Plaintiff.  This is true despite the fact that Plaintiff's attorneys have been advertising and soliciting potential plaintiffs on their website and Facebook page since at least June 8, 2015. **Exhibit 13.**

10

## III.   LAW AND ARGUMENT

### A.   The Standard of Review

The Fair Labor Standards Act ("FLSA") provides that a private cause of action may be brought against an employer "by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated*." 29 U.S.C. § 216(b) (emphasis added). District courts have discretion to authorize notice to the putative class, but only in "appropriate cases." *See Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 69 (1989).

To determine whether it is "appropriate" for a case to proceed as a collective action, courts within the Sixth Circuit generally apply "a two-stage certification process . . . to determine whether the opt-in plaintiffs and lead plaintiffs were similarly situated." *See O'Brien v. Ed Donnelly Enterprises*, 575 F.3d 567, 583 (6th Cir. 2009).  The first stage, or conditional certification, takes place at the beginning of discovery. *See Comer v. Wal-Mart Stores*, 454 F.3d 544, 546 (6th Cir. 2006). At this stage, the court determines whether the lawsuit can be conditionally certified as a collective action so that potential opt-in plaintiffs can be notified of the suit's existence and of their right to participate. *See Fisher v. Michigan Bell Tel. Co.*, 665 F.Supp.2d 819, 825 (E.D. Mich 2009); *Olivio v. GMAC Mortgage Corp.*, 374 F.Supp.2d 545, 547-48 (E.D. Mich. 2004). If the court grants conditional certification at the first stage, then the parties proceed with the costly and time-

11

consuming process of conducting discovery with respect to any opt-in plaintiffs, as well as a likely motion to decertify the class.

Before the parties incur the time and expense required following conditional certification, "[t]he lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." *O'Brien*, 575 F.3d at 584. The FLSA does not define "similarly situated" and it does not provide a method for certifying a collective action. *See O'Brien,* 575 F.3d at 584. Plaintiff must "submit evidence establishing at least a colorable basis for their claims that a class of similarly situated plaintiffs exists." *See Fisher*, 665 F.Supp.2d at 825. As Plaintiff acknowledges in his brief, he must present <u>evidence</u> that his position is similar to those HFHS employees in the putative class and that they were subject to a common plan or policy that violated the law. *See* Pl. Brief at 12.

While the standard for conditional certification may be "lenient," it is not a mere formality. *See, e.g., Pacheco v. Boar's Head Provisions Co.*, 671 F.Supp.2d 957, 960 (W.D. Mich. 2009) (noting that the court has "a responsibility to assure that there is some factual basis for plaintiffs' claims of class-wide discrimination before judicial approval of the sending of notice is granted") (internal quotations and citations omitted).   At the first stage, the court does not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Fisher*, 665 F.Supp.2d at 825. "The Court does not, however,

12

review Plaintiff's evidence in a vacuum.  It reviews Plaintiff's evidence in light of the evidence submitted by Defendants." *Holley v. Erickson Living*, 2012 WL 1835738, *4 (E.D. Pa. May 21, 2012) (citations omitted). Indeed, a plaintiff's "conclusory allegations are insufficient to support conditional certification." *Arrington v. Michigan Bell Tel. Co.*, 2011 WL 33119691 *4 (E.D. Mich. August 1, 2011) (Lawson, J.) (unpublished).[6]

### B.   Plaintiff Has Not Demonstrated Any Interest By Other Employees To Show That A Collective Action Is Appropriate

The "first question a court should consider when deciding whether to conditionally certify a class and issue court supervised notice is whether 'there are other employees . . . who desire to opt-in.'" *Frye v. Baptist Memorial Hosp., Inc.*, 2008 WL 6653632, *6 (W.D. Tenn. Sept. 16, 2008) (quoting *Dybach v. State of Florida Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991). "Others' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of a notice to a conditionally certified class of claimants." *Parker v. Rowland Express, Inc.*, 492 F.Supp.2d 1159, 1165 (D. Minn. 2007) (citation omitted).  In the present case, Plaintiff has provided no evidence that any other HFHS employees are interested in opting-in. This Court has considered the same issue in *Arrington v. Michigan Bell Tel. Co.*, 2011 WL 33119691 *4 (E.D.

---

[6] Copies of all unpublished cases are included in alphabetical order in the unpublished case appendix attached as **Exhibit 11.**

Mich. August 1, 2011) (Lawson, J.) (unpublished).  In *Arrington*, there was a single named plaintiff and five opt-in plaintiffs at the time the plaintiff sought conditional certification of the class under the FLSA. *See id.* at *1. The Court noted that in other cases where conditional certification was granted, there were far more named plaintiffs and opt-ins. *See id.* at *5 ("For instance, *Wlotkowski* involved five plaintiffs and 60 opt-ins, and *Fisher* had 104 opt-ins at the time of conditional certification. Likewise, *Perkins* involved five plaintiffs and 60 opt-ins."). This Court went on to hold that "[i]f none other than the named plaintiffs assert an FLSA violation, there is no need to employ the procedural device of a collective action to adjudicate their disputes." *Id.* The Court subsequently denied the motion for conditional certification, relying in part on this factor.

Here, the facts are even clearer than in *Arrington* that a collective action is not the proper procedural device to adjudicate Plaintiff's FLSA claim.  There is only one plaintiff in this matter (who is in the process of moving out of state). Plaintiff signed his "Consent to Join" on April 3, 2015.  Over the course of the past five months, there have been no opt-in plaintiffs despite advertising by Plaintiff's attorneys. In *Arrington*, the plaintiffs anticipated that the putative class would have at least 150 members. *See id.*  In this matter, Plaintiff is seeking a collective action of almost 3,700 employees.  The fact that Plaintiff has been unable to obtain any opt-in plaintiffs, or even obtain any affidavits to support his claim from any of the

14

thousands of other HFHS employees, forcefully indicates that a collective action is inappropriate. *See also*, *Swinney v. Amcomm, Tele., Inc.*, 2013 WL 28063 *8 (E.D. Mich. Jan. 2, 2013) (denying motion for conditional certification where the named plaintiff was the only individual who submitted an affidavit in support of the motion) (unpublished); *Cason v. Vibra Healthcare*, 2011 WL 1659381, *5-6 (E.D. Mich. May 3, 2011) (denying motion for conditional class certification and noting that while the plaintiff's failure to identify any other employees who claimed that their FLSA rights were violated was not dispositive, "it counsels against certifying the extremely broad class of employees plaintiff had identified") (unpublished); *Moore v. PNC Bank,* 2013 WL 2338251 (W.D. Pa. May 29, 2013) (denying conditional certification of FLSA claim in case involving one named plaintiff and potential class of over 2,000 employees) (unpublished); *Hall v. Guardsmark*, 2012 WL 3580086 (W.D. Pa. August 17, 2012) (holding that absence of affidavits from other potential opt-in plaintiffs "weakens" plaintiff's request for conditional certification).

### C.   Plaintiff Has Not Shown He Is Similarly Situated To Other Employees In The Proposed Collective Class

Plaintiff has the burden of establishing that he is "similarly situated" to the other employees in the collective class for which he seeks conditional certification. *O'Brien*, 575 F.3d at 584.  In order to establish that he is similarly situated, a named plaintiff can demonstrate that he is similarly situated with the potential

plaintiffs if they were "victims of a common policy or plan that violated the law" and "when proof of that policy or of conduct in conformity with that policy proves a violation as to all of the plaintiffs." *Olivio v. GMAC Mortgage Corp.*, 374 F.Supp.2d 545, 548 (E.D. Mich. 2004); *O'Brien*, 575 F.3d at 585. Alternatively, the named plaintiff must show that "his position is similar, not identical, to the positions held by the putative class members." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th. Cir. 2006) (citations omitted).

Plaintiff falls well short of sustaining his burden in this matter. Plaintiff has not demonstrated, and quite frankly cannot demonstrate, that he and other HFHS employees were victims of a common plan or policy which could prove an FLSA violation as to all plaintiffs (or to any, for that matter). Moreover, Plaintiff has not made any attempt to demonstrate how his position and his job duties are similarly situated to the other HFHS employees he seeks to include in the collective class. Plaintiff's conclusory allegations in his motion are insufficient to meet his burden for conditional certification. Therefore, Plaintiff's motion should be denied.

### 1.   Plaintiff Is Not Similarly Situated With Other HFHS Employees By Virtue of a Common Policy or Plan

While Plaintiff makes a passing reference to other HFHS policies in his Complaint (¶46), he does not attach the policies or identify them in his motion. A review of just a few of these policies confirms that Plaintiff is not similarly situated with other HFHS employees by virtue of a common plan or policy.

16

The General Appearance Standards require uniformed employees to comply with the requirements of their local business units or departments. *See* **Exhibit 2,** General Appearance Standards, Section 2.0. The Radiology Appearance Standards, with which Plaintiff must comply, do not adopt Section 5.0 of the General Appearance Standards, upon which Plaintiff bases his claim.  Contrast this with the Infection Control Policy Manual and various surgical department attire policies, which mandate that any employees who work in the surgical department must wear attire laundered by the hospital. *See* **Exhibits 5-7**.

Moreover the manner in which HFHS employees comply with any HFHS appearance requirements confirms that Plaintiff is not similarly situated with the putative class. The declarations from numerous non-exempt employees involved in direct patient care establish that the employees do not engage in "uniform maintenance" as alleged by Plaintiff.  Those employees: do not iron their scrubs or uniforms; have not been instructed to do so; and have not been disciplined for not ironing their scrubs or uniforms. Some of the employees: wash their scrubs or uniforms with their other clothes; remove their scrubs or uniforms from the dryer before they wrinkle; do not wash their scrubs or uniforms; rather, someone else, like a spouse or significant other, does it for them and one of these employees receives laundered scrubs from the hospital. *See* Employee Decls., **Exhibit 9**.

17

In addition, declarations from eleven supervisors confirm that they do not instruct their employees to iron their uniforms and employees are not disciplined for not ironing their uniforms. *See* Supervisor Decl., **Exhibit 10**.  In addition, none of the eleven supervisors iron their uniforms and none of the eleven supervisors are aware of any employees in their department who iron their uniforms. *See id.*  It is these significant and material differences, both with the policies themselves and the manner in which employees comply with them, which compel the conclusion that Plaintiff is not similarly situated to the other employees in the proposed class.

## 2.   Plaintiff Has Not Shown That His Job Responsibilities Make Him Similarly Situated With Other HFHS Employees

Aside from the fact that Plaintiff is not similarly situated with other HFHS employees with respect to a "common policy or plan" or the manner in which HFHS employees comply with those various policies, Plaintiff has not established that he is similarly situated by way of his job responsibilities.  Indeed, Plaintiff has not provided any evidence of how his job responsibilities are similarly situated with any HFHS employees who work in each of the various job classifications involved with direct patient care.

As set forth in HFHS's Motion to Dismiss, the Court must ultimately determine whether the claimed task – wearing a non-wrinkled uniform – is "integral and indispensable" to <u>each</u> of the various 230 job classifications held by employees in the putative class.  It is for this reason that it is critical that Plaintiff

18

establish that his responsibilities are similarly situated to other HFHS employees. Otherwise, a collective action would not be appropriate because it would not assist the Court in conducting the "integral and indispensable" analysis under the FLSA. Here, Plaintiff failed to present any evidence, or even argument, of how his job responsibilities are similarly situated to other HFHS employees. For this reason alone, Plaintiff's motion for conditional certification must be denied.

### 3.   Plaintiff's Conclusory Assertions Are Irrelevant

Instead of presenting the Court with evidence that he is similarly situated, Plaintiff relies on his declaration and asserts his belief that all HFHS employees are required to iron their uniforms based on the "face" of the General Appearance Standards, "his discussions with managers and co-workers, and his observation of Defendant's other uniformed employees during the relevant period." *See* Complaint, ¶ 56; Pl. Brief at p. 10.   This is precisely the type of conclusory statement this Court found to be insufficient to support a motion for conditional certification. *See Arrington, supra*. Another district court also held, in a similar case involving Plaintiff's counsel, that the virtually identical conclusory assertions cannot support a motion for conditional certification:

> Plaintiffs try to make an end-run around the requisite factual showing simply by averring that "[t]hrough their personal observations of, and discussions with, their co-workers during the relevant period, Plaintiffs believe that Defendants' Hospital Employees were subjected to the same meal break work policies and practices and [were] affected the same way by them." *These unsupported assertions are*

19

> *made in such a conclusory fashion as to be devoid of meaning.*
> *Plaintiffs' declarations lack the sort of factual content that would*
> *allow the Court to conclude that Plaintiffs have any personal*
> *knowledge of practices or policies outside their specific departments*
> *and, if so, which departments.*

*Dinkel v. Medstar Health*, 880 F.Supp.2d 49, 56 (D.D.C. 2012) (internal citations omitted) (emphasis added). *See also*, *Bacon v. Eaton Aeroquip, LLC*, 2012 WL 4321712 (E.D. Mich. Sept. 12, 2012) (denying motion for conditional class certification where plaintiffs failed to show they had personal knowledge of alleged violation covering larger class).

### 4.    Other Courts Agree That Similar "Uniform Maintenance" Claims Should Not Be Conditionally Certified

Other courts have agreed that, under substantially the same circumstances, conditional certification of FLSA claims for "uniform maintenance" is inappropriate.  For example, in *Chandler v. Heartland Employment Serv.,* 2014 WL 1681989 (E.D. Pa. Apr. 28, 2014), the plaintiff worked as a dietary aide for the defendant-employer.  The plaintiff claimed, in part, that she spent at least two hours per week ironing her uniform pursuant to a company policy which required her uniform to be "free from wrinkles."  In support of their motion for conditional certification, the named plaintiff and two opt-in employees provided testimony that their supervisors told them to iron their uniforms.  In addition, the plaintiffs asserted they were told in training sessions that they had to iron their uniforms.

20

The court noted that the plaintiffs identified only one policy that applied to all of the defendant's facilities – "the requirement that employees' clothing be 'free from wrinkles' and that uniforms be kept 'clean and in good repair.'" *Id.* at *3. The court further noted the plaintiffs' claim "that the wrinkle-free policy imposed a de facto ironing requirement that led employees to perform several hours weekly of unpaid work." *Id.* The court held that, notwithstanding these allegations, plaintiffs failed to meet the "modest factual showing" necessary to certify a collective class. *Id.* at *4. The court observed that the plaintiffs did not address differences between the uniforms worn by the putative class. *Id.* The court further noted that "the actual effect of the 'wrinkle-free' policy appears to depend on its implementation by individual facilities, departments and supervisors." *Id.* On this basis, the court denied certification based on the "wrinkle-free" policy. *Id.*

Just as in *Chandler*, Plaintiff is trying to imply some de facto "ironing" requirement in the General Appearance Standards (which does not exist) and then apply that unfounded requirement to almost 3,700 HFHS non-exempt direct patient care employees working in over 100 facilities, for 1,131 supervisors and in 230 job classifications. HFHS, like the employer in *Chandler*, requires different uniforms for different employees and further maintains department-based policies for appearance and uniforms. As in *Chandler*, the actual effect of the General Appearance Standards depends on its implementation by the various HFHS

21

business units and departments, a fact which is confirmed by the existence of specific departmental policies for uniformed employees.

The dramatic differences between Plaintiff and other HFHS employees are abundant. The only conclusion which can be drawn from these differences is that Plaintiff is not similarly situated to potential employees in the putative class, whether based on alleged uniform maintenance or application of a common policy. Because Plaintiff is not similarly situated, he cannot obtain conditional collective certification and his motion must be denied. *Williams v. Securitas Sec. Serv.,* 2011 WL 3629023 (E.D. Pa. Aug. 17, 2011) (denying conditional class certification in uniform maintenance case where there were differences between employees with respect to how they maintained uniforms); *Hall v. Guardsmark*, 2012 WL 3580086 (W.D. Pa. Aug. 17, 2012) (denying conditional certification where policy required employees uniforms to be "well-pressed at all times" because plaintiffs failed to submit evidence they were similarly situated to employees in putative class).

### 5.    The Cases Cited By Plaintiff Are Inapposite

The cases cited by Plaintiff in support of conditional certification are distinguishable. For example, while the court granted conditional certification with respect to a uniform maintenance claim in *Dinkel v. Medstar Health,* the defendant in that case failed to oppose certification of the uniform maintenance issue, so the court determined that defendant conceded conditional certification.

22

*See* 880 F.Supp.2d 49, 58 ("In the absence of meaningful opposition from Defendants, the Court exercises its discretion to treat the matter as conceded."). Moreover, as set forth in HFHS's motion to dismiss, the *Dinkel* court recently dismissed the uniform maintenance claims as a matter of law. *See Dinkel v. Medstar Health*, __ F.Supp.3d __, 2015 WL 1735078 (D.D.C. April 16, 2015), a fact which Plaintiff conveniently failed to provide to the Court.

While conditional certification was granted in *Outlaw v. Secure Health LP,* 2012 WL 3150582 (M.D. Pa. August 2, 2012), the facts in that case are distinguishable because the claims were limited to non-exempt employees working at two nursing homes, unlike the thousands of employees and numerous facilities and policies at issue here. Moreover, the legal basis for the decision in *Outlaw* was called into question by the *Goldstein* court because the cases on which the *Outlaw* relied were either non-FLSA cases or were distinguishable on the facts. *See Goldstein v. Children's Hospital of PA*, 2013 WL 664174 (E.D. Pa. Feb. 23, 2013).

### D.    The Proposed Notice Is Objectionable

In the unlikely event the Court conditionally certifies the class, the notice Plaintiff requests for the putative class is objectionable. Any notice must advise potential opt-in plaintiffs that they may be held liable for the payment of HFHS's costs associated with this lawsuit if HFHS prevails. *See Robbins-Pagel v. Wm. F. Puckett, Inc.*, No. 6:05-cv-1582, 2006 WL 3393706 (M.D. Fla. Nov. 22, 2006)

("[T]his Court finds that form inadequate because it fails to inform potential plaintiffs that, if they do opt-in and are unsuccessful on the merits of their claim, they may be responsible for the defendant's costs in this matter. Any notice, to be approved by this Court, must include a full disclosure of the individuals' rights and responsibilities should they decide to opt-in to the suit.").

The judicial neutrality statement is currently buried in Plaintiff's proposed notice.  The statement regarding judicial impartiality should be set forth in bold, underlined text and it should appear immediately under the case caption. *See, e.g., Wright v. Lehigh Valley Hosp. and Health Network*, 2011 WL 221770, *6 (E.D. Pa. Jan. 20, 2011) ("[A] statement regarding the Court's neutrality is common in FLSA notices and should be added in bolded, all capital letters…."); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 540 (N.D. Cal. 2007) ("[N]otices typically contain a court caption and the bolded statement of neutrality below the caption should make the court's position clear to potential plaintiffs."); *Hoffman v. Securitas Sec. Serv.*, 2008 WL 5054684, *15 (D. Idaho Aug. 27, 2008) (holding that the reference should be "bolded and enhanced" and should contain words to the effect that: "The Court has taken no position in the case regarding the merits of Plaintiff's claims or Defendants' defenses. Therefore, this Notice is not an expression by the Court of any opinion as to the merits, if any, of the lawsuit."); *Boyd v. Jupiter Alum. Corp.*, 2006 WL 1518987, *6 (N.D. Ind. May 31, 2006)

24

(case caption did not suggest judicial sponsorship of plaintiff's claims because notice included neutrality disclaimer in boldface type).

In addition, the proposed notice improperly implies that potential opt-in plaintiffs must be represented by Plaintiffs' counsel if they want to join in this suit or that there is some significance to having been appointed by the Court. This is improper and not required or authorized by law.  In addition, one of the Plaintiff's attorneys, David Cohen, is not authorized to practice law in this judicial district.

While Plaintiff has utterly failed to meet his burden for conditional certification in this matter, if the Court determines that notice will be provided, then Plaintiff's proposed notice should be revised to address these objections.

## IV.   <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff's motion should be denied.

Respectfully submitted,

VARNUM LLP

By:  /s/ Terrence J. Miglio
    Terrence J. Miglio (P30541)
    Barbara E. Buchanan (P55084)
    Attorneys for Defendant
    39500 High Pointe Blvd., Suite 350
    Novi, Michigan 48375
Date: August 27, 2015    (248) 567-7400

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2015, I caused the foregoing documents to be electronically filed with the Clerk of the Court using the ECF System, which will send notification of such filing to all counsel of record.

<u>/s/ Terrence J. Miglio</u>

9708779

1