UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WHALEY,

                Plaintiff,                  Case Number 15-12101

v.                                        Honorable David M. Lawson

HENRY FORD HEALTH SYSTEM,

                Defendant.

_____/

**OPINION AND ORDER GRANTING MOTION TO DISMISS, DENYING AS
MOOT MOTION FOR CONDITIONAL CERTIFICATION AS COLLECTIVE ACTION,
AND DISMISSING CASE WITH PREJUDICE**

      The question presented by the defendant's motion to dismiss is whether time spent by certain hospital workers laundering and pressing their own hospital scrubs at home is compensable under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* As described by the complaint, which the Court accepts as true for this motion, the activity is not the "principal activity . . . which [the plaintiff was] employed to perform," 29 U.S.C. § 254(a)(1), because it was "preliminary" to his job as a MRI Technologist. Nor can the activity be deemed "integral and indispensable" to the plaintiff's job, as that phrase is interpreted by the applicable precedents. Therefore, the activity as a matter of law is not compensable under the FLSA, and the defendant's motion to dismiss will be granted. The plaintiff's motion for conditional certification of the case as a collective action will be dismissed as moot.

I.

      According to the complaint, plaintiff Daniel Whaley has been employed as a full-time MRI Technologist at Henry Ford Hospital since September 2003, working at various campuses over the years, and presently assigned to the hospital's Main Campus in Detroit, Michigan. The plaintiff's

work duties include direct contact with patients, visitors, and other employees in the defendant's facilities.  He prepares patients for MRI scans, transfers patients from their beds to the MRI table, sets up monitoring equipment for intensive care unit patients, injects patients with contrast dyes, handles patients' bodily fluids, ensures patient safety, checks patients' vital signs, and monitors them for changes in their overall health and behavior.

Henry Ford Hospital System (HFHS), a not-for-profit corporation with its corporate headquarters in Detroit, Michigan, owns, controls, and manages a network of six hospitals and a network of health centers, medical centers, optometrist's offices, emergency rooms, and pharmacies that employ over 23,000 people in the Metro-Detroit area.

On January 1, 1999, HFHS introduced a mandatory, system-wide personal appearance standards policy.  By its terms, the policy was intended to promote "The Henry Ford Experience" for patients at the defendant's facilities by creating a uniform workforce appearance that "reflect[s] an image of competence and professionalism," helps to ensure "compliance in relation to infection control/safety protocols and other regulatory requirements," and "engage[s] employees in creating a healthy environment focusing on Patient Care."  The policy is identified in a memorandum designated "Policy No. 5.06" and entitled "Personal Appearance Standards." Section 2.0 of the memorandum states:

> This policy applies to all employees, students, volunteers, contractors, vendors, and others during workdays, weekends, and off hours who work at all Henry Ford Health System business units and locations when they are in their role as an employee of the System.  Employees who are required to wear a uniform must comply with their approved policy as established by their local business unit/department.

The appearance policy itself is articulated in section 4.0 of the memorandum, which reads:

> HFHS employees are expected to maintain proper hygiene and observe standards of appropriate business attire.    All  HFHS  employees  shall  present  themselves

well-groomed, and appropriately dressed at all times while on premises.  Although the general minimum requirements of this systemwide policy must be adhered to at each business unit, a business unit or department (i.e. patient care areas) can choose to implement more restrictive requirements based on infection control and other regulatory requirements.

The memorandum then provides examples in section 5.0 for several categories of appearance

features, such as clothing, hair, nails, scent, and so forth.  For clothing, section 5.0 states:

|          | **Acceptable** | **Unacceptable** |
|----------|----------------|------------------|
| Clothing | Clean, neat, pressed, in good repair and appropriate size | Soiled, wrinkled, torn, noticeably worn, too tight or too loose.  See-through or revealing |

Other examples of the Personal Appearance Standards include:

|       | **Acceptable** | **Unacceptable** |
|-------|----------------|------------------|
| Hair | • Neat, clean and groomed style.<br>• Beards, sideburns and mustaches will be neatly trimmed.<br>• Direct patient care and food service areas:<br>    ▪ Hair longer than shoulder length should be confined so it will not interfere with customer service or patient care.<br>    ▪ Hairnets will be worn in food service areas. | • Extreme unnatural hair color.<br>• Large, elaborate & exaggerated spiky hairstyles & accessories.<br>• Poorly groomed facial hair.<br>• Any strong odor resulting from the use of tobacco |
| . . . |  |  |
| Shoes | • Clean, polished, moderate to low heels. Style appropriate as defined by department dress code<br>• Shoes should compliment the clothing.<br>• Open-toed shoes are permitted in non-clinical office settings provided the employee has no direct contact with patients. | • Scuffed, dirty, unpolished, untied.<br>• Heels higher than 2½ inches.<br>• Open toed shoes in facilities where patient care is delivered.<br>• Crocs without back strap and perforated shoes in any HFHS facility where patient care is delivered. |

The memorandum also prescribes a uniform color scheme for certain designated departments.  The

plaintiff, who worked in the radiology department as a technician, was required to wear a cotton

-3-

scrub top and scrub bottom in navy blue.  It does not appear that the defendant furnished the clothing; rather, the plaintiff bought his own scrubs.

The plaintiff alleges that the defendant adopted the new policy for a variety of reasons, including the desire to simplify HFHS's operational activities by providing a single dress and appearance standard; facilitate patient safety and infection control; minimize work days lost to illness; avoid increased costs associated with replacement workers; avoid costs associated with hiring an outside vendor to provide clean and pressed uniforms; and mitigate financial losses for extended hospitalizations or repeated admissions caused by hospital-acquired infections.  The policy establishes a link between uniforms and infection control by explaining that adherence to the policy helps employees comply with "infection control/safety protocols" and is intended to "engage employees in creating a healthy environment focusing on Patient Care."

If employees fail to comply, they are subject to progressive punishment, up to and including termination.  The plaintiff contends that strict discipline for appearance and dress code violations suggests that the dress code is an integral and indispensable part of an employee's job.

The plaintiff alleges that the defendant did not provide employees with on-site access to laundry equipment, clean or press their scrubs "in-house," or contract with a vendor to launder and press their clothes.  As a result, the plaintiff contends that the only option for the defendant's employees was to spend several "off-the-clock" hours each week — either at home or in a laundromat — properly maintaining their work clothing.

The plaintiff notes that the hospital employees' duties put them in direct contact with a wide variety of infectious pathogens and bodily fluids on a regular basis.  If such contact occurs, the plaintiff notes, pathogens can not only contaminate and survive on the cotton scrubs, but if left

-4-

untreated, they can multiply rapidly and transmit infection from the contaminated clothing to patients, visitors, co-workers, and other surfaces in the facility.  The plaintiff contends that the failure adequately to control infection pathways in a healthcare setting creates both direct risks — such as the transmission of infectious pathogens to previously-uninfected individuals — and indirect risks — such as reduced productivity due to employee absence, staff, and scheduling problems, and financial losses resulting from non-payment for extended or repeat hospitalizations.

The plaintiff alleges that the defendant could not possibly provide adequate patient care, ensure the safety of its patients and employees, or avoid the risks and problems identified above without maintaining a policy that required its employees to show up for work in clean, hygienic, stain-free, ironed, and wrinkle-free scrubs.  Therefore, the plaintiff argues, the time that employees spend to maintain their work clothes in a clean, hygienic, stain-free, ironed, and wrinkle-free condition is a necessary, inherent, and integral part of their jobs.  Moreover, the plaintiff contends that the policy suggests a strong link between clean scrubs and the defendant's revenues and profitability.

The plaintiff alleges that the defendant knew that its employees spent "off-the-clock" time maintaining their work clothing because it promulgated the personal appearance standards policy, knew about the patient safety and infection control issues that unclean clothes could cause, did not provide its employees with laundry or ironing facilities, and trained supervisors and managers to instruct employees to follow the requirements contained in the policy.  Despite this knowledge, the plaintiff alleges, the defendant did not provide its employees with on-site access to laundry equipment, did not implement sufficient procedures to ensure that employees documented the time

they spent complying with the policy, and did not compensate employees for the "off-the-clock" time they spent ironing and laundering their scrubs.

During the relevant period, the plaintiff earned a straight-time rate of approximately $26.49 per hour and an overtime premium rate of about $39.74 per hour. However, the plaintiff alleges that he has never been paid any wages for the time he spent cleaning or ironing his work clothes to comply with the defendant's personal appearance standards policy. On average, the plaintiff alleges, he spent three overtime hours per week performing "off-the-clock" clothing maintenance activities, which amounts to about $119.22 per week. In that time, the plaintiff apparently includes about two hours per week waiting for the washer and dryer cycles to finish, and another hour ironing.

The plaintiff filed his two-count complaint under the FLSA and Michigan's Workforce Opportunity Wage Act (WOWA). He alleges that the defendant's employees have been regularly deprived of wages owed for the "off-the-clock" time they spent maintaining their hospital scrubs in clean, hygienic, stain-free, ironed, and wrinkle-free condition. On the same date, the plaintiff filed a motion for conditional certification of the case as a collective action under 29 U.S.C. § 216(b), to include

> [a]ll people who have worked as full-time, hourly uniformed employees for Defendant in any workweek in the past three years who had direct patient care responsibilities and spent unpaid "off-the-clock" time maintaining their uniforms pursuant to Defendant's Personal Appearance Standards Policy.

The plaintiff alleges, upon information and belief, that this collective group includes, but is not limited to: anesthesia technicians, cardiac technicians, CAT scan technologists, CGNAs, CNAs, GNAs, hospitality aides, interventional technologists, nurse aides, physical therapists, respiratory technicians, restorative aides, registered nurses, STNAs, and ultrasound technologists. He estimates that the collective group will include several thousand members.

-6-

II.

The defendant's motion is brought under Federal Rule of Civil Procedure 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the Court views complaint in the light most favorable to the plaintiff, the allegations of fact are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive a motion to dismiss under that rule, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court, but conclusions may not be accepted unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). However, as long as a court can "'draw the reasonable inference that

-7-

the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010). And even if a document is not attached to a complaint, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335-36. If the plaintiff does not directly refer to a document in the pleadings, but that document governs the plaintiff's rights and is necessarily incorporated by reference, then the motion need not be converted to one for summary judgment. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be considered without converting the motion to one for summary judgment even though the complaint referred only to the "plan" and not its associated documents).

The defendant raises three arguments: (1) the plaintiff does not have standing to sue because as a radiology technician, he is not subject to the general appearance policy, but instead is governed by a radiology-department-specific policy; (2) the complaint fails to state an FLSA claim because the activity described by the plaintiff — washing and ironing his scrubs — is not covered activity;

-8-

and (3) because the defendant is subject to the FLSA, it is exempt from the claim under the Michigan WOWA.

## A.   Standing

The defendant points out that the basis for the plaintiff's argument that HFHS *requires* the plaintiff to wash and iron his work clothes is section 5.0 of the Personal Appearance Standards Policy No. 5.06.   But the defendant insists that section 5.0 does not apply to employees of the radiology department, which has its own appearance standards that do not mention that clothing must be "clean, neat, pressed, [and] in good repair," and did not specifically incorporate the "Practice and Procedure" section of HFHS's general personal appearance rules.   That argument strains credulity, but it must be addressed because it challenges this Court's jurisdiction.

Absent standing, the plaintiff cannot proceed with his claims in this court.   Federal courts are courts of limited jurisdiction and are empowered to adjudicate only actual "cases" and "controversies."   U.S. Const. art. III, § 2.   "To establish Article III standing, a litigant must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable decision."   *Barnes v. City of Cincinnati*, 401 F.3d 729, 739 (6th Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff's alleged injury in fact must implicate a legally protected interest.   *See Lujan*, 504 U.S. at 560; *see also White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010).   Economic or property losses are sufficient to constitute injuries in fact.   *White*, 601 F.3d at 552.   The injury must be "actual or imminent, not conjectural or hypothetical."   *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted).   But the plaintiff must assert his own interests and cannot base his case on injuries suffered by others.   *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citations omitted).

-9-

If the plaintiff is not governed by an HFHS policy that requires him to wash and iron his work clothes "off the clock," so goes the defendant's reasoning, he cannot have suffered an injury in fact, and he has no standing to sue. But that argument ignores the plain language of section 2.0 of Personal Appearance Standards Policy No. 5.06, which states that the "policy applies to *all* employees . . . ." (emphasis added). There is no more comprehensive term than "all," *see Sander v. Alexander Richardson Inv.*, 334 F.3d 712, 716 (8th Cir.2003) (holding, in the context of construing written instruments, that "[i]n short, 'all' means all"); *see also Cty. of Oakland v. Fed. Hous. Fin. Agency*, 716 F.3d 935, 940 (6th Cir. 2013) (observing that "a straightforward reading of the statute leads to the unremarkable conclusion that when Congress said "all taxation," it meant all taxation"), which, in the context of Policy 5.06 indicates that *everyone* with a work connection to HFHS is covered. The defendant notes that under section 4.0, a "department . . . can choose to implement more restrictive requirements," and the radiology department did just that, without specifically adopting section 5.0 of the general policy. But that does not exempt an employee from complying with the general rules as well. And it cannot be argued with a straight face that the radiology department would not expect its workers to be dressed in clothing that is "[c]lean, neat, pressed, in good repair and appropriate size" or would tolerate clothing that was "[s]oiled, wrinkled, torn, noticeably worn, too tight or too loose[, s]ee-through or revealing." To suggest otherwise would be, in the defendant's word, absurd.

The plaintiff has pleaded an injury in fact by alleging plausibly that he is governed by an employment policy that requires him to perform activity which he contends is compensable under the FLSA, but for which the defendant did not pay him. Because that policy applies to him, he has

standing to assert the claim, the controversy is "actual," and the Court has jurisdiction to adjudicate it.

## B.  Fair Labor Standards Act Claim

The FLSA requires employers to compensate employees who work more than 40 hours in a week at the premium rate of one and one-half times their base rate of pay.  29 U.S.C. § 207(a)(1). Employers covered by the FLSA who fail to comply with its requirements "may be liable to their affected employees 'in the amount of their . . . unpaid overtime compensation' and 'in an additional equal amount as liquidated damages.'"  *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting 29 U.S.C. § 216(b)).  To state a claim for an overtime violation, a plaintiff must plead facts that plausibly establish "(1) an employer-employee relationship, (2) that the employees are covered, (3) the employees worked more than forty hours, and (4) that overtime was not paid.  *Anderson v. GCA Servs. Grp. of N. Carolina, Inc.*, No. 15-37, 2015 WL 5299452, at *4 (W.D. Ky. Sept. 9, 2015) (citing 29 U.S.C. § 207(a)); *see also Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013) (stating that "[t]he basic elements of a FLSA claim are that (1) plaintiffs must be employed by the defendants; (2) the work involved interstate activity; and . . . (3) plaintiffs 'performed work for which they were under-compensated'" (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012))); *but see Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) (holding that "[a]n unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work").

For the present motion, the only disputed element is whether the activity alleged — washing and ironing the plaintiff's work clothes — is work for which the plaintiff is entitled to compensation during the workweek.

-11-

Initially, the Supreme Court interpreted the statutory workweek to "include[] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946). That broad definition "provoked a flood of litigation," to which Congress "swiftly" responded by enacting the Portal–to–Portal Act of 1947. *Integrity Staffing Solutions, Inc. v. Busk*, ---U.S.---, 135 S. Ct. 513, 516-17 (2014). The Portal–to–Portal Act amended the FLSA to exempt employers from wage claims based, among other things, on "activities which are preliminary to or postliminary to said principal activity or activities [which an employee is employed to perform]." 29 U.S.C. § 254(a)(2).

Under the FLSA, "work" means "'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Brock v. City of Cincinnati*, 236 F.3d 793, 801 (6th Cir. 2001) (*quoting Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). The FLSA defines "employ" to mean "to suffer or permit to work." 29 U.S.C. § 203(g). Compensable work may also include work performed either before or after a shift, as long as the work is an "integral and indispensable part of the principal activities for which covered [employees] are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956).

The activity alleged here — washing and ironing one's work clothing — occurred before the shift and off the employer's premises. No one contends that the activity itself amounted to the "principal activity or activities which [the] employee is employed to perform." 29 U.S.C. § 254(a)(1). Whaley was hired to perform MRI scans, not to wash and iron scrubs. *See Integrity Staffing Sols.*, 135 S. Ct. at 518. But the plaintiff argues that ironing clothing *became* the principal activity because it was "integral and indispensable" to performing the job of an MRI technologist,

-12-

a contention that the defendant hotly disputes.  *See Steiner*, 350 U.S. at 252-53 (holding that "the term 'principal activity or activities' in [29 U.S.C. § 254] embraces all activities which are 'an integral and indispensable part of the principal activities'"); *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 33 (2005) (noting that "§ 4 of the Portal-to-Portal Act does not remove activities which are 'integral and indispensable' to 'principal activities' from FLSA coverage precisely because such activities are themselves 'principal activities'").  The resolution of that dispute lies in the precedents defining and applying those terms.

The Supreme Court's cases use dictionary definitions for them.  *Id.* at 517.  "Integral" means "belonging to or making up an integral whole; constituent, component; specifically necessary to the completeness or integrity of the whole; forming an intrinsic portion or element, as distinguished from an adjunct or appendage."  *Ibid.* (internal quotation marks and alterations omitted) (quoting 5 Oxford English Dictionary 366 (1933) (OED)).  "Indispensable," when used in the context of a duty, "means a duty that cannot be dispensed with, remitted, set aside, disregarded, or neglected."  *Ibid.* (internal quotation marks and alterations omitted) (quoting 5 OED 219).  After reiterating those definitions, the *Integrity Staffing Solutions* Court concluded that "[a]n activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities."  *Ibid.*

As illustrations, the Court cited *Steiner v. Mitchell*, a case in which workers at a battery plant sought to be compensated under the FLSA for time spent at the beginning of their shift changing into protective clothing and time at the end of their shift showering.  350 U.S. at 248.  The Court found that the time was compensable because of the inherent risk of lead poisoning to people both inside

-13-

and outside of the battery factory, and the employer did not dispute a finding that "the clothes-changing and showering activities of the employees [were] indispensable to the performance of their productive work and integrally related thereto." *Id.* at 251. The *Integrity Staffing Solutions* Court also cited *Mitchell v. King Packing Co.*, in which the Court held compensable under the FLSA the time that "knifemen" in a meat packing plant spent sharpening their tools immediately before or after their shifts or on their lunch breaks. 350 U.S. 260, 263 (1956). The Court relied on findings that knives "must be 'razor sharp' for the proper performance of the work," and that "'a knife to be of any practical value in a knife job has to be . . . sharp.'" *Id.* at 262. And in *Integrity Staffing Solutions* the Court held that the time warehouse employees spent waiting for security screenings after their shift ended, but before they were allowed to leave the warehouse, was *not* compensable because it was "not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment," noting that the employer "could have eliminated the screenings altogether without impairing the employees' ability to complete their work." *Integrity Staffing Sols.*, 135 S. Ct. at 518. And the Department of Labor's regulations explain that "activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance." 29 C.F.R. § 790.8(c).

In *Franklin v. Kellogg Co.*, a pre-*Integrity Staffing Solutions* case, the Sixth Circuit adopted a three-part test for determining whether an activity is integral and indispensable, asking: "'(1) whether the activity is required by the employer; (2) whether the activity is necessary for the employee to perform his or her duties; and [3] whether the activity primarily benefits the employer.'" 619 F.3d 604, 620 (6th Cir. 2010) (quoting *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007)). Although the first and third elements provide helpful guidance,

-14-

after *Integrity Staffing Solutions*, only the second element appears to be the governing criterion. *See Integrity Staffing Sols.*, 135 S. Ct. at 519 (holding that it is error to "focus[] on whether an employer required a particular activity"; and that "[a] test that turns on whether the activity is for the benefit of the employer is similarly overbroad").

The defendant argues that washing and ironing scrubs cannot be integral and indispensable to the performance of the job of MRI technologist because that job could be completed in wrinkled clothing. Moreover, the defendant observes, ironing the scrubs is not even necessary to satisfy the Personal Appearance Standards, because many garments are made of no-iron fabric and come from the wash wrinkle-free — apparently including the plaintiff's own scrubs, according to their washing instructions.

The plaintiff counters with the argument that HFHS has made it a job requirement to show up for work wearing their scrubs (in their assigned color) maintained in a "clean," "neat," and "pressed" condition. The plaintiff contends that term "pressed" is synonymous with ironed; and ironing can promote HFHS's priority of infection control by killing microorganisms that survive the washing process. The plaintiff insists that he could not possibly perform his job as an MRI technologist wearing contaminated clothing.

The defendant has the more sensible argument. The Personal Appearance Standards policy upon which the plaintiff attempts to build his case is quite specific in its requirement that clothing be "[c]lean, neat, pressed, in good repair and appropriate size." But, as noted earlier, that policy applies to *all* hospital employees, from hospital administrators, to doctors, nurses and other health care providers, to maintenance and sanitation workers. To suggest that the policy imposes upon any category of hospital worker, such as MRI technologists, an obligation to take measures that ensure

-15-

pathogen-free garb is simply not plausibly supported by the pleaded facts.  A work rule that requires an employee to maintain one's own clothing in a presentable condition does not impose an activity that is "integral and indispensable" to the performance of the job described in the complaint.  The plaintiff has not described a need or obligation to create a sterile atmosphere — as in an operating room — or to don protective clothes and shed contaminated gear in the workplace — as in *Steiner v. Mitchell* — or to prepare tools that are essential to the performance of his assigned tasks — as in *Mitchell v. King Packing Co.  See also Kosakow v. New Rochelle Radiology Assocs., P. C.*, 274 F.3d 707, 717-18 (2d Cir.2001) (holding that the powering up and testing of an X-ray machine was "integral" to the taking of X-rays, a principal activity of an X-ray technician).  Instead, it is safe to say as a matter of law that washing and ironing one's own work clothes cannot be characterized as an activity "with which the employee cannot dispense if he is to perform his principal activities." Laundering work clothes, therefore, falls squarely within the rubric of an "activit[y] which [is] preliminary . . . to said principal activity or activities [which an employee is employed to perform]." 29 U.S.C. § 254(a)(2).

The plaintiff suggests that his position is supported by several district court cases, Department of Labor opinion letters, and regulations.  That authority does not fit this case, however. For instance, he cites 29 C.F.R. § 531.3(d)(2)(iii), in which the Secretary declared that "the cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform" is a "facility" that is "primarily for the benefit of the . . . employer," and therefore not to be included in the computation of wages under 29 U.S.C. § 203(m) (defining   "wage" as "includ[ing] the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are

-16-

customarily furnished by such employer to his employees . . .").  That rule, however, does not address whether washing the employee's own work clothing constitutes "activities which are preliminary to or postliminary" to covered work under the Portal–to–Portal Act.

In the same vein, the plaintiff cites *Marshall v. SF of Ohio, Inc.*, No. 77-931, 1981 WL 2309 (S.D. Ohio Jan. 1, 1981), for the idea that time spent by an employee maintaining an employer-required uniform is compensable under the FLSA.  That case is readily distinguishable, however, because it deals only with the employer's uniforms.  In that case, the employees worked for the Long John Silver's Seafood Shoppe restaurant chain and were provided uniforms by their employer.  The employer marketed itself, in part, through the use of distinctive "crew costumes," and required the employees to report to work with their employer-provided uniforms in a neat and clean condition.  The *Marshall* court found that wearing and laundering the uniforms were for the benefit of the employer because the unique uniforms were part of its marketing strategy, and therefore uniform maintenance was "indispensable to communicating th[e] marketing concept to the public."  *Id.* at *7.

In reaching its decision, the *Marshall* court considered two opinion letters by the Administrator of the Department of Labor, Wage and Hour Division — relied upon by the plaintiff here — which addressed the costs of laundering and maintaining required uniforms, affording the letters *Skidmore* deference.  *See Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944) (finding courts should give the Administrator's rulings, interpretations, and opinions weight dependant on the "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade").  The first letter recommends that for enforcement purposes, the Administrator would consider that employees spend

-17-

one hour a week laundering uniforms and that the cost of supplies and operation of washing machines was *di minimis*. *Marshall*, 1981 WL 2309, at *2 (citing DOL Opinion Ltr. No. 1326, WH-274 (June 7, 1974)). The second letter was cited for the proposition that there are situations where the employer and employee can establish a different basis for allocating the costs of laundering required uniforms, such as in a collective bargaining agreement. *Ibid.* (citing DOL Opinion Ltr. No. 1371, WH-318 (April 17, 1975)).

Unlike this case, the uniforms in *Marshall* were provided by the employer; the employee was required to maintain the employer's property. The DOL opinion letters adopt that limitation. *See* DOL Opinion Ltr. No. 1371, WH-318 (April 17, 1975) (explaining that the letter "reference[s] . . . our letter of June 7, 1974, concerning employer liability for maintaining *uniforms provided without cost to the employee*" (emphasis added)). Moreover, the Long John Silver's Seafood Shoppe restaurant chain used the uniforms as costumes to market its restaurant concept, which was indispensable to its business. Here, the plaintiff is seeking compensation for laundering his own clothing at home, a "preliminary" activity, according to the criteria set out in *Integrity Staffing Solutions*.

The plaintiff also string-cites several other cases without much discussion, but they are not persuasive. Several of the cases addressed only motions for conditional certification, which required only consideration whether the plaintiffs had made a "modest factual showing" that there are other employees who are similarly situated to the named plaintiff. For instance, in *Chandler v. Heartland Employment Services, LLC*, No. 12-4395, 2014 WL 1681989, at *3 (E.D. Pa. Apr. 28, 2014), the question addressed by the court was whether a collective action should be certified. The plaintiffs worked for nursing homes that had policies requiring employees to keep their uniforms "free from

-18-

wrinkles" and that they be kept "clean and in good repair." The plaintiffs argued that the wrinkle-free policy imposed a *de facto* ironing requirement that led to several hours of unpaid work each week. However, the court denied the motion for conditional certification of an FLSA collective action because the plaintiffs had not provided evidence that the defendant's policy affected employees similarly companywide. 2014 WL 1681989, at *6.

And in *Goldstein v. Children's Hospital of Philadelphia*, No. 2013 WL 664174 (E.D. Pa. Feb. 25, 2013), the court noted provocatively that although the plaintiff made the "modest factual showing" necessary for step one of the conditional certification process, the court was "presented neither with a motion to dismiss nor for summary judgment, where Plaintiff must support her claim and survive summary judgment with reference to particular facts." *Id.* at *5; *see also id.* at *4 (citing *Schwartz v. Victory Security Agency, LP*, No. 11-0489, 2011 WL 2437009 (W.D. Pa. June 14, 2011) (holding that time spent in cleaning and maintaining work uniforms and equipment was not integral and indispensible to the principal activity of security guards in providing security services and thus not compensable)).

Finally, although the court in *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49 (D.D.C. 2012), granted the motion to conditionally certify the collective action, it did so because the defendant did not defend against the plaintiff's uniform maintenance claim. *Id.* at 58. Later, however, the same court granted summary judgment to the defendant hospital on the plaintiff hospital workers' claims for overtime compensation based on at-home uniform maintenance "because the uniform maintenance activities are not integral and indispensable to the employees' principal activities and because they are not principal activities themselves." *Dinkel v. MedStar*

*Health Inc.*, 99 F. Supp. 3d 37, 38 (D.D.C. 2015). The plaintiffs in *Dinkel* advanced claims nearly identical to the ones put forth in the present case.

The plaintiff in the present case has not pleaded facts that show that the activity claimed — washing and ironing his work clothing at home — was activity for which his employer was required to compensate him under the Fair Labor Standards Act. Therefore, his complaint fails to state a claim for which relief can be granted.

### C. Michigan Workforce Opportunity Wage Act

The plaintiff has stated an alternative count for similar relief under the Michigan WOWA, Mich. Comp. Laws § 408.411 *et seq.* Overtime compensation is governed by both the federal FLSA and the WOWA. The FLSA applies to employers with two or more employees who are engaged in interstate commerce and have an annual gross income of over $500,000. 29 U.S.C. § 203(b), (d), (i), (j), & (s). The WOWA applies to employers who have two or more employees, but it specifically exempts employers who are otherwise covered by the FLSA. *See* Mich. Comp. Laws §§ 408.412 & 420(1).

In this case, the defendant concedes that it is subject to the FLSA, and the plaintiff agrees that his WOWA claims accordingly should be dismissed. Pl.'s Br. in Opposition to Mot. to Dismiss at 1 n.1. Therefore, the Court will dismiss Count II of the complaint.

### D. Conditional Certification

Based on the foregoing discussions, the Court will dismiss both counts of the complaint. Without a viable claim, the plaintiff cannot represent others whom he alleges are similarly situated. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877-78 (6th Cir. 2012) (holding that because plaintiff's FLSA claims were dismissed, decertification was proper); *see also Taylor v.*

*Waddell & Reed, Inc.*, No. 09-2909, 2012 WL 10669, at *5 (S.D. Cal. Jan. 3, 2012) (denying the plaintiff's motion for conditional class certification as moot because the FLSA claim did not survive the defendant's motion for summary judgment).

### III.

The plaintiff has standing to assert his claims, and the Court has jurisdiction to decide them. However, the plaintiff has not stated claims in his complaint for which relief can be granted. The dismissal of the complaint renders moot the motion for conditional certification of a class of collective action.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. #16] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the plaintiff's motion for conditional certification of the case as a collective action [dkt. #4] is **DENIED as moot**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 24, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 24, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI